[Department Two.—February 15, 1883.]

## WILLIAM P. LAMBERT, RESPONDENT, *v.* E. A. Mc-CLOUD, APPELLANT.

REPLEVIN — CONTRACT OF SALE — FINDINGS. —The action was replevin to recover a horse in the possession of the defendant. The possession was acquired from one Coates, to whom the horse had been delivered by the plaintiff under a contract of sale subject to certain conditions to be performed before the title should pass. The case was tried by the court without a jury, and written findings were filed, on which a judgment was entered in favor of the plaintiff. On a review of the findings, *held*, that the facts found did not support the judgment.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Chickering & Thomas*, for Appellant.

*Dudley & Dudley*, and *Van Ness & Moore*, for Respondent.

THORNTON, J.—This is an action of claim and delivery of a horse alleged to be of the value of seven hundred dollars. Judgment passed for plaintiff. Defendant moved for a new trial, which motion was denied, and defendant appeals from the judgment and the order denying the motion above mentioned.

The principal question arises on the decision of the court below, which, so far as necessary to be stated, is contained in the following findings of fact:-

"1. That in the month of May, 1876, the plaintiff was the owner, and entitled to the immediate possession of the personal property described in the complaint filed in this action.

"2. That in the month of May, and while still the owner of said horse, and so in possession of the said horse, the said plaintiff agreed with one W. D. Coates to sell the said horse to said Coates upon the following terms and conditions, to wit:—

"That the said Coates should purchase for the said plaintiff as much stock as one thousand dollars would carry upon a margin, to wit, the customary margin allowed in the office of the firm of Hunt & Coates, and should carry said stock for said plaintiff, at the risk of said W. D. Coates, until a profit was realized upon the same of one thousand dollars; and when said

profit was so realized, the said Coates should notify the said plaintiff, and that upon the receipt of said notice the said plaintiff should elect to draw down the said profit of one thousand dollars, or carry at his own risk the stock so purchased as aforesaid.

"3. That a bill of sale of said horse from the said plaintiff to said Coates was made and signed by the plaintiff, and was, by the consent and agreement of the said plaintiff and the said Coates, placed in the hands of one John L. Hunt, to be held by him in trust for both parties, until the said Coates should notify the said plaintiff of the realization of a profit of one thousand dollars upon the stock purchased as aforesaid, and that thereupon the said Hunt should deliver the said bill of sale of the said horse to the said Coates.

"4. That it was agreed and understood by and between said parties that the title to said horse should not vest in the said Coates until the delivery to him of the said bill of sale in the manner hereinbefore set forth.

"5. That upon the completion of the said contract, in the month of May, 1876, aforesaid, the said plaintiff, under the terms of said contract, delivered the said horse into the possession of the said Coates.

"6. That the firm of Hunt & Coates, composed of John L. Hunt and W. D. Coates, failed and became bankrupt in the month of January, A. D. 1878.

"7. That thereupon the said plaintiff demanded of said Coates the return of said horse, which demand the said Coates failed and refused to comply with.

"8. That subsequent to the making of the contract hereinbefore set forth, and prior to this action, the said Coates transferred the possession of the said horse to the defendant in this action.

"9. That the said W. D. Coates has not, at any time since the making of the contract hereinbefore set forth, notified said plaintiff of the realization of the profit of one thousand dollars, or given the said plaintiff any notice whatsoever in relation thereto; and that the stock purchased by said Coates has not realized a profit of the said amount since the day of its purchase by the said Coates."

The court held as conclusions of law from the foregoing facts that the sale to Coates was a conditional sale, and that the title of the property in dispute was not to pass to Coates until the performance of the conditions; that the conditions had not been performed, and no title passed to Coates or to defendant. Therefore plaintiff was entitled to judgment.

It is clear that the sale of the horse, as found, was a sale on credit or time; for the stock was to be bought at a future day, and the horse was to be delivered at once. This is the meaning of the findings. (See findings one to five, both inclusive.) On such a sale the right of property and right of possession vest in the purchaser (Coates), unless it is stipulated to the contrary. (*Bloxam* v. *Sanders*, 4 Barn. & C. 941; Benjamin on Sales, 3d Am. Ed. § 678.) In this case it was stipulated, and it is so found, that the right of property should not pass until Coates, the purchaser, should notify the plaintiff of the realization of the profit fixed by the contract upon the stock to be purchased by Coates. But it was not stipulated that Coates should not have the right of possession of the horse; and this right is sufficient to maintain the possession of the defendant claiming under Coates, unless such right has terminated. Coates having purchased the stock, as long as he carried it he was entitled to the possession. He was then complying with his contract, and was in no default. There is evidence that Coates purchased the stock in accordance with his agreement, and none to the contrary, and such seems to have been assumed as a fact in the ninth finding, though it is not expressly found. There is no finding that Coates was not carrying the stock purchased by him as above stated, and as long as he was carrying the stock, as we have seen, he was entitled to the possession. To put Coates in default he must have ceased to carry the stock, or it must appear that though he was carrying it, there was no probability that the profit of one thousand dollars would be realized upon it within a reasonable time. We cannot hold as matter of law or fact that he was not carrying the stock as agreed on. This, if true, should have been found. It is assumed by the court below as a fact that he purchased the stock as required by the agreement, and it does not appear but that he was doing all that was necessary to carry it. We cannot know that there was

any assessment to be paid on the shares purchased, or anything else to be done by Coates in order to carry the stock in the absence of a finding to that effect. It may be that there was no assessment to be paid, and that nothing was to be done in order to carry the stock; that all that was required was to hold it for a rise.

If it be true that Coates was and is carrying the stock, and there is no reasonable probability that the profit of one thousand dollars will be realized within a reasonable time, this must be made to appear to the court by a finding to that effect, or it cannot be noticed here. This court cannot judicially know that such is the fact. The court below should· find it if it be so.

The finding that the firm of Hunt & Coates failed and became bankrupt in January, 1878, shows no breach of the contract on the part of Coates. Coates may still be solvent and able to comply, and actually comply with the contract. There is nothing strange in a firm becoming insolvent, and one of the partners remaining solvent.

Should it appear that Coates has abandoned all idea of carrying out the contract, the plaintiff would be entitled to recover.

It follows from the foregoing that the judgment and order must be reversed, and the cause remanded for a new trial, and it is so ordered.

MYRICK, J., and SHARPSTEIN, J., concurred.